IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CYPRESS PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-1478-L |
| | § | (consolidated with |
| JALLAD & R INVESTMENTS, LLC, | § | No. 3:21-cv-1939-L) |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff/Counter-Defendant Cypress Property and Casualty Insurance Company has filed a motion for summary judgment [Dkt. No. 60], which United States District Judge Sam A. Lindsay has referred to the undersigned for hearing, if necessary, and recommendation. *See* Dkt. No. 79.

Cypress seeks summary judgment on its claim for Declaratory Judgment and on Defendant/Counter Plaintiff Jallad & R Investments, LLC's counterclaims. *See* Dkt. No. 60.

Jallad filed a response, *see* Dkt. No. 74, Cypress filed a reply, *see* Dkt. No. 86, and, with leave, Jallad filed a sur-reply, *see* Dkt. No. 97.

For the reasons explained below, the undersigned recommends that the Court deny Cypress's motion for summary judgment [Dkt. No. 60].

**Background**

This lawsuit concerns an insurance claim for hail damage.

-1-

Jallad purchased commercial property located at 1220 Senlac Drive, Carrollton, Texas in early 2018. Jallad then remodeled the property, converting the interior of the building into a functional warehouse.

Jallad purchased a builder's risk insurance policy from Cypress while it was remodeling. At the time, Jallad had two members and principals, Allaeddin Jallad and Rami Ramadan.

The policy extended coverage from March 12, 2018, until July 12, 2018. The Policy includes the following conditions:

> LOSS CONDITIONS
>
> C. Duties In The Event of Loss
>
> You must see that the following are done in the event of loss or damage to Covered Property:
> * * *
> 2. Give us prompt notice of the loss or damage. Include a description of the property involved.
> 3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
> * * *
> 6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. …
> 7. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to the insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.
> * * *
> 10. Cooperate with us in the investigation or settlement of the claim.

Dkt. No. 61-2 at 13.

A hailstorm occurred at the property on June 5, 2018, during the policy period.

-2-

Because this was during the renovation, the property was unoccupied.

A tenant, Wholesale Wheel and Tire ("WWT"), moved into the building around September of 2018.

In mid-2019, Rami Ramadan (who is a member of both Jallad and WWT) and employees of WWT noticed the roof began leaking into the warehouse after it rained.

On October 9, 2019, Jallad retained Asset Management Services ("AMSI") to inspect its roof due to the leak. AMSI inspected the property and determined the roof had widespread hail damage. It recommended that the roof be replaced due to the hail damage and that Jallad make an insurance claim for the damage if it had coverage.

On November 19, 2019, Jallad hired a Texas licensed public adjuster, Jason Lanier of J. A. Lanier & Associates, Inc. ("Lanier"), to assist it with investigating the date on which the hail damage occurred.

Lanier and consultant Gary Treider inspected the property and investigated its damage and the proper date of loss. After this investigation, Mr. Treider ruled out all other storms and determined that approximately 97% of the hail damage on the roof occurred on June 5 or 6, 2018 and that the hail damage from the June 2018 storm required replacement of the roof.

On March 6, 2020, Lanier provided Cypress notice of loss or damage, with a date of loss of June 5, 2018. *See id.* at 52.

In its initial Reservation of Rights and Request for Additional Information, Cypress requested documents relating to the purchase of the property, including the sales contract, any addenda, seller disclosures, and building appraisals. *See id.* at 55.

-3-

Cypress also assigned the claim to its adjuster, Patrick Robinson, who assigned it to Ben Ralph as an independent adjuster to inspect the claim.

Lanier spoke with Robinson and provided him with the facts of the claim as he knew them. Both Treider and Lanier had conversations with Ralph by email, providing him pictures of the damage and weather data for that storm.

Ralph reported back to Robinson that there was hail damage to the skylights, roof membrane, and soft metals from the subject storm. He recommended hiring an engineer and having samples from the roof tested to confirm the damage.

On April 17, 2020, Patrick Robinson and Cypress informed Jallad that they had retained an engineer from Rimkus Consulting ("Rimkus") to inspect Jallad's property for damages. Robinson also requested additional information and documents from Jallad.

Rimkus inspected the property on April 29, 2020.

On May 7, 2020, Cypress received Rimkus's report. Rimkus confirmed that there was hail damage to the property, but Rimkus was unable to determine when the hail damage may have occurred. It identified three possible dates of loss: 1) the reported date of loss (June 5 or 6, 2018), 2) April 3, 2012, and 3) May 24, 2011. Other damage found to the property was determined to be caused by aging, degradation, and/or mechanical impact and not the result of hail. The report was not provided to Jallad.

Also on May 7, 2020, Deborah de la Paz-Boxer of Cypress informed Jallad and Lanier that the hail claim was assigned to the Special Investigation Unit ( "SIU") of

Cypress for further fact verification and investigation. An insurer typically has its SIU investigate when it believes fraud may be involved in a claim.

On May 11, 2020, Lanier emailed De la Paz Boxer and the adjuster of the claim, Patrick Robinson, upset about the seeming allegations of fraud and requesting a copy of the Rimkus report. Lanier did not receive a response.

On May 15, 2020, Lanier responded to Robinson's document request, noting that the insured did not have several of the documents or that the requested documents did not exist but that the insured would provide any existing documentation.

On June 4, 2020, Cypress requested examinations under oath of the "Insured's managing principals, Allaeddin Jallad and Rami Ramadan." Dkt. No. 61-2 at 124. Cypress also requested that the following documents be provided before the EUOs:

> 1. Documents related to Jallad & R Investments, LLC's mitigation of the damages subject to the referenced claim, including but not limited to, temporary repair estimates, photos and invoices to the roof;
> 2. Roof assessments or other documents from the roofer or other contractor or consultant who inspected the Insured Location, including but not limited to, a person or entity who identified hail damage to the roof of the Insured Location;
> 3. A complete, detailed estimate for the claimed repairs to the roof of the Insured Location;
> 4. Copies of any full forensic engineer's report, including but not limited to, sketches, photos, weather data, and other supporting information and documentation that Jallad & R Investments, LLC is relying upon to support a reported date of loss;
> 5. Photographs of the Insured Location at time of purchase and after the reported loss;
> 6. Contracts or written agreements, communications, emails by and between Jallad & R Investments, LLC with Jason Lanier or J.A. Lanier Associates, LLC and any other representatives on the referenced claim, including all documents provided to Jason Lanier or J.A. Lanier

Associates, LLC or its employees, agents or representatives;

7. Communications, emails, agreements and letters by and between Jallad & R Investments, LLC with any consultant, including but not limited to, Gary Treider, and in any way related to the referenced claim;

8. Lease documents between Jallad & R Investments, LLC or related entity and any and all tenants or other occupiers or users of the Insured Location, including but not limited to, Wholesale Wheel & Tire, LLC and any previous tenant, user or occupier of the Insured Location;

9. Documents from the purchase of the Insured Location by Jallad & R Investments, LLC to include the contract for sale, addendums, supplements, and pre-purchase reports/inspections and including full copy of building purchase documents, sales contract, contract addendums, seller disclosures and building appraisal;

10. Drawings and/or design plans for changes, renovation, remodel, or repairs to the Insured Location after purchase by Jallad & R Investments, LLC, including but not limited to, renovation plans, permits, scopes/estimates/invoices;

11. Documents by and between Jallad & R Investments, LLC and Comerica Bank and any other lender pertaining to the Insured Location, including but not limited to, lender inspections, lender communications, reports, and loan documents or other document detailing the condition of the interior and exterior of the Insured Location at the time of purchase;

12. Documents by and between Jallad & R Investments, LLC and Wholesale Wheel & Tire, LLC related to rental, occupancy or use of the Insured Location, including but not limited to, emails related to the rental, occupancy or use of the Insured Location, lease or other use or occupancy agreements, rental or other payments to Jallad & R Investments, LLC;

13. Documents and communications by and between Jallad & R Investments, LLC and Greta T. Stogner Insurance Agency about Jallad & R Investments, LLC's request and application for insurance from Cypress Property & Casualty Insurance Company, including but not limited to, all documents provided by Jallad & R Investments, LLC to Greta T. Stogner Insurance Agency; and

14. Any other information or documents you or Jallad & R Investments, LLC believes support the referenced claim, loss or damages to the Insured Location.

*Id.* at 124-25.

On September 18, 2020, Cypress again requested the EUOs and documents. *See*

*id.* at 127-29.

Also in September of 2020, Lanier again requested the engineer's report from Patrick Robinson. Lanier was told that, because the investigation was ongoing, Cypress would not provide the report to him or the insured.

On October 8, 2020, Cypress examined Rami Ramadan under oath. *See* Dkt. No. 75 at 256-80. Ramadan stated he had the most information about the claim, handled the claim for the insured, and had produced all pertinent and reasonably requested documents, which were all the documents that he had – except for closing documents related to the purchase of the property, which Ramadan said did not reference the condition of the property.

Cypress denied the claim on October 21, 2020. *See* Dkt. No. 61-2 at 151-154. The stated reason for denial was Jallad's failure to meet its agreed duties and conditions as advised in the policy. Specifically, Cypress noted the following alleged failures:

(1)     Jallad did not provide prompt notice of the loss or damage;
(2)     Jallad did not take all reasonable steps to protect the Covered Property from further damage;
(3)     Mr. Allaeddin Jallad has not appeared for his Examination Under Oath;
(4)     Jallad has not permitted Cypress to examine its books and records;
(5)     Mr. Ramadan has not returned his signed Examination Under Oath transcript;
(6)     Jallad has not returned any of the signed authorizations for records;
(7)     Jallad has not produced the documents Mr. Ramadan testified to having in his office and responsive to the prior document production requests;
(8)     Jallad has not produced the other documents requested of Jallad prior to Mr. Ramadan's Examination; and
(9)     Jallad has not produced the documents requested of Jallad

after Mr. Ramadan's Examination.

*Id.* at 151.

On November 30, 2020, Cypress's counsel told Jallad that, although Cypress could not complete its investigation and determine coverage and issues of valuation based on the information and documents provided, Cypress remained willing to continue with its investigation "once Jallad & R Investments, LLC ('Jallad') abides by the conditions of the policy and cooperates with Cypress." *Id.* at 138.

> And Cypress again requested documents:
>
> [P]rior to Mr. Ramadan's Examination, your office provided Cypress with a limited document production, which was identified as Exhibit 1 to Mr. Ramadan's Examination transcript. During Mr. Ramadan's testimony, he confirmed responsive documents were provided to his public adjuster, Jason Lanier, but were inexplicably not included in the production made Exhibit 1 to his transcript. Cypress requests the immediate production of all documents Mr. Ramadan provided to Jason Lanier, the public adjuster representing Jallad & R Investments, LLC, and related in any way to the document production requests made by Cypress previously or as set forth below.

Dkt. No. 75 at 138-39. "Additionally, Cypress reiterate[d] its prior request for documents relevant and material to its investigation of this claim. Specifically, Cypress reiterate[d] its request for the documents identified in prior correspondence. Without limitation, Cypress request[ed] production of:

> 9. Documents from the purchase of the Insured Location by Jallad & R Investments, LLC to include the contract for sale, addendums, supplements, and pre-purchase
> reports/inspections and including full copy of building purchase documents, sales contract, contract addendums, seller disclosures and building appraisal;
> 10. Drawings and/or design plans for changes, renovation, remodel, or repairs to the Insured Location after purchase by Jallad & R

-8-

Investments, LLC, including but not limited to, renovation plans, permits, scopes/estimates/invoices;

10. Drawings and/or design plans for changes, renovation, remodel, or repairs to the Insured Location after purchase by Jallad & R Investments, LLC, including but not limited to, renovation plans, permits, scopes/estimates/invoices;

11. Documents by and between Jallad & R Investments, LLC and Comerica Bank and any other lender pertaining to the Insured Location, including but not limited to, lender inspections, lender communications, reports, and loan documents or other document detailing the condition of the interior and exterior of the Insured Location at the time of purchase;

12. Documents by and between Jallad & R Investments, LLC and Wholesale Wheel & Tire, LLC related to rental, occupancy or use of the Insured Location, including but not limited to, emails related to the rental, occupancy or use of the Insured Location, lease or other use or occupancy agreements, rental or other payments to Jallad & R Investments, LLC;

13. Documents and communications by and between Jallad & R Investments, LLC and Greta T. Stogner Insurance Agency about Jallad & R Investments, LLC's request and application for insurance from Cypress Property & Casualty Insurance Company, including but not limited to, all documents provided by Jallad & R Investments, LLC to Greta T. Stogner Insurance Agency; and

14. Any other information or documents you or Jallad & R Investments, LLC believes support the referenced claim, loss or damages to the Insured Location.

*Id*. at 139. And Cypress again requested an examination of Allaeddin Jallad under oath:

Next, Cypress reiterates its prior request for the Examination Under Oath of Allaeddin Jallad. Mr. Ramadan confirmed Mr. Jallad is a member of Jallad & R Investments, LLC. Further, Mr. Ramadan confirmed Mr. Jallad was involved in the procurement of the insurance policy, that Mr. Jallad has personal knowledge of the condition of the Insured Location both before and after the reported date of loss, and that Mr. Jallad has an insurable interest in the claim. Cypress has determined Mr. Jallad's testimony is relevant, material and necessary to allow Cypress to reasonably adjust the claim and make the appropriate coverage decisions.

*Id*. at 139.

On December 10 and 11, 2020, Jallad confirmed that Allaeddin Jallad would not submit to an EUO. *See id*. at 151.

According to the summary judgment evidence, no further action was taken concerning investigation or determination of the claim.

In its First Amended Complaint for Declaratory Judgment, Cypress seeks a declaration that Jallad materially breached the policy and that, because no justifiable excuse exists for this failure to comply with the policy, Cypress was unable to complete its investigation necessary to determine coverage and issues of valuation of loss and the failure to abide by the policy conditions resulted in prejudice to Cypress. *See* Dkt. No. 12.

Jallad filed counterclaims for breach of contract, violations of the Texas Insurance Code and DTPA, unfair insurance practices, and breach of the duty of good faith and fair dealing. *See* Dkt. No. 18 at 5-15

Cypress seeks summary judgment on its claim for declaratory judgment and on all of Jallad's counterclaims.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict

-10-

for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (cleaned up).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140

F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc);

*accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the

allegations in the pleadings alone" but rather "must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial." (cleaned up)).

The Court is required to consider all evidence and view all facts and draw all

reasonable inferences in the light most favorable to the nonmoving party and resolve

all disputed factual controversies in favor of the nonmoving party – but only if the

summary judgment evidence shows that an actual controversy exists. *See Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511;

*Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable

inferences are to be drawn in [her] favor. While the court must disregard evidence

favorable to the moving party that the jury is not required to believe, it gives credence

to evidence supporting the moving party that is uncontradicted and unimpeached if

that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne

Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (cleaned up). And

"[u]nsubstantiated assertions, improbable inferences, and unsupported speculation

are not sufficient to defeat a motion for summary judgment," *Brown v. City of

Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of

evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*,

767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable

inferences, unsubstantiated assertions, and legalistic argumentation do not

adequately substitute for specific facts showing a genuine issue for trial." (cleaned up)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (cleaned up). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (cleaned up). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

-13-

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (cleaned up). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (cleaned up).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (cleaned up).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at

*10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.    <u>Objections to summary judgment evidence</u>

Each party objects to portions of the other party's summary judgment evidence. *See* Dkt. No. 76 at 15-18 (Jallad's objections); Dkt. No. 84 (Cypress's response to Jallad's objections); Dkt. No. 85 (Cypress's objections).

As a matter of efficiency, the undersigned will only take up the objections to evidence on which the undersigned relies in making the recommendation on Cypress's motion for summary judgment. At the time that the undersigned relies on evidence to which either party objects, the undersigned will address the objections.

If the undersigned relies on evidence but does not discuss an objection, the undersigned considered both the evidence proffered and objections, and, to the extent the undersigned regarded portions of the evidence as relevant, admissible, and necessary to the resolution of particular summary judgment issues, overruled those objections. To the extent that the undersigned did not rely on other evidence about which either party complains, the objections are denied as moot. *Accord Balfour Beatty Rail Inc. v. Kansas City S. Ry. Co.*, No. 3:10-cv-1629-L, 2012 WL 3100833, at *20 (N.D.

Tex. July 31, 2012).

II.    <u>Cypress's motion for summary judgment on its claim for declaratory judgment</u>

Cypress contends that it is entitled to summary judgment as a matter of law on its declaratory judgment claim because the undisputed facts show Jallad breached the insurance policy by failing to cooperate in Cypress's investigation of the claim.

As the party with the burden of proof on its claims, Cypress must establish beyond peradventure all essential elements of its declaratory judgment claim to warrant judgment as a matter of law in its favor. *See Fontenot*, 780 F.2d at 1194. The "beyond peradventure" standard imposes a heavy burden. See *Balfour Beatty*, 2012 WL 3100833, at *16.

A.    <u>The duty to provide prompt notice of the claim</u>

Cypress asserts that it is undisputed Jallad breached its contractual duty to promptly provide notice of the claim.

A policy condition requiring prompt notice is both enforceable and a condition precedent to liability. See *Alaniz v. Sirius Intern. Ins. Corp.*, 626 F. App'x 73, 76 (5th Cir. 2015); *Dairyland Cnty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157 (Tex. 1973).

The Cypress Policy requires that, in the event of loss or damage, Jallad must "give us prompt notice of the loss or damage" and "include a description of the property involved." Dkt. No. 61-2 at 13.

The parties do not dispute that "prompt" as used in the Cypress Policy is generally construed to mean a reasonable time after the occurrence. *See Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005).

-16-

Jallad provided its notice of claim on March 6, 2020, for a loss or damage occurring on June 5, 2018. It is undisputed that Jallad became aware of alleged damage as early as mid-2019. Jallad determined that the property had hail damage in November 2019. The claim was not reported to Cypress until March 6, 2020, more than six months after it knew the property had hail damage.

In its response, Jallad concedes that its notice of the claim was "arguably late" but argues that it had a good reason for the late notice: It could not provide notice of loss until it completed its internal investigation. Jallad asserts that it did not know if it had a claim or just an uncovered leak until after AMSI's inspection and that, after AMSI determined the roof had hail damage, Jallad did not know the date of loss and therefore did not know what carrier to report a loss to. And so Jallad contends that it was reasonable to wait until it completed its internal investigation to provide a notice of claim or loss from the hail damage.

"While generally a question of fact, reasonableness becomes a question of law if the facts are undisputed." *Alaniz*, 626 F. App'x at 76. And, "if the delay occurs without explanation [or because of a flimsy excuse], it is appropriate to conclude that prompt notice was not given as a matter of law." *Id.* at 77 (cleaned up).

But Jallad offers an explanation that is, if credited, more than a flimsy excuse. Considering all facts and drawing all reasonable inferences in the light most favorable to Jallad and resolving all disputed factual controversies in Jallad's favor, whether Jallad gave Cypress notice on this policy within a reasonable time after the occurrence raises at least a fact issue as to the reasonableness of the delay and whether Jallad

-17-

had sufficient information prior to giving notice to determine whether it could make a claim and on which policy.

On these competing accounts, the undersigned finds there is a genuine issue of material fact as to whether Jallad provided notice of loss or damage within a reasonable time after the occurrence under the circumstances.

B.    The duty to cooperate in the investigation

Cypress also argues that the undisputed facts show Jallad failed to cooperate with its investigation, as required by the policy's cooperation clause.

The insurance policy provided that, in the event of loss, Jallad had a duty to cooperate with Cypress in the investigation of the claim. *See* Dkt. No. 61-2 at 13. A cooperation clause is a material policy provision as a matter of law and a condition precedent that an insurer must satisfy to be entitled to coverage. *See Philadelphia Indem. Ins. Co. v. Stebbins Five Companies,* No. 3:02-cv-1279-M, 2002 WL 31875596, at *5 (N.D. Tex. Dec. 20, 2020).

But an insurer is not relieved of liability by the mere failure of the insured to comply with such conditions. *See Clarke v. Allianz Global Risks U.S. Ins. Co.*, 639 F. Supp. 2d 751, 756 (N.D. Tex. 2009) (citing *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex. 1993)). Instead, an insurer seeking to escape liability must establish that the failure to comply with the condition caused it to be "prejudiced." *Id.*

Cypress argues Jallad failed to cooperate with Cypress's investigation of the claim by failing to provide requested documentation and an examination under oath ("EUO") of its President, Allaeddin Jallad, and that, as a result of these failures and

Jallad's late notice, Cypress was prejudiced in its attempts to investigate the claim.

The policy provides that in the event of loss, "as often as may be reasonably required," Jallad must permit Cypress to examine its books and records. It is undisputed that Cypress made multiple requests for documents. Cypress asserts that Jallad failed to produce the requested documents and argues that the documents were necessary so it could determine the state of the property prior to the purchase and renovation and the age of the roof, which would help Cypress determine the timing and causes of the reported damage.

Jallad does not dispute that it failed to provide all requested documents. Instead, it highlights the word "reasonably required" in the policy provision permitting Cypress to examine Jallad's books. "When the EUO and documentation was relevant to the claim, Jallad complied." Dkt. No. 76-30. But Jallad did not provide the requested documents if it thought they were not reasonably required for Cypress's investigation. "The problem was … the requested information was irrelevant." *Id.* According to Jallad, "[t]he policy, the law, and simple decency do not entitle Cypress to perform the investigation it wanted." *Id.* at 22.

The parties disagree as to whether Jallad's failure to provide some of the requested documents was reasonable and about which party, Cypress or Jallad, was authorized to determine what was reasonable under the terms of the policy.

Cypress asserts that Jallad "simply argues from ipse dixit that the requests for documents and information made by Cypress were unreasonable" but, according to Cypress, "if Jallad were correct that an insured could unilaterally decide 'enough is

enough' and fail to provide additional information to an insurer, the claims process would be meaningless" because "[s]ubmitting a claim would be a mere formality to recovering policy benefits despite whether covered loss existed." Dkt. No. 86 at 3-4. But that is not what is happening here – Jallad refused to provide additional requested materials at its peril because Cypress can assert a failure to cooperate and have a finder of fact make the ultimate decision under the governing standards.

And that is what should happen on this record. The undersigned concludes that there are genuine issues of material fact as to whether Jallad breached the cooperation clause by failing to provide all requested documents as reasonably required under the circumstances and whether Cypress was prejudiced by Jallad's failure to produce some requested materials.

The policy also provided that, in the event of loss, Jallad "may examine any insured under oath." *See* Dkt. No. 61-2 at 13.

Cypress argues that Jallad refused to present its Principal Member and President, Allaeddin Jallad, for an examination under oath as required by the policy. Cypress asserts that Allaeddin Jallad's testimony was relevant, material, and necessary to Cypress's investigation. In his EUO, Rami Ramadan testified that Allaeddin Jallad was involved in the procurement of the policy and had knowledge of the condition of the property. Cypress argues that both issues were under review by Cypress as part of its investigation.

Jallad highlights the word "insured" in the examination-under-oath provision. It asserts that Jallad & R Investments, LLC is the insured, not the individuals

Allaeddin Jallad or Rami Ramadan. *See* Dkt. No. 76 at 22 ("[B]eing a member of an entity does not make you an insured."). Jallad also states that it designated Rami Ramadan as the insured's representative for an examination under oath and argues that it had no duty to permit Cypress to also examine Allaeddin Jallad under oath.

The parties again disagree as to which party was authorized to identify the "insured." Jallad argues that it was reasonable to identify and present only its designated representative for an EUO. Cypress argues that the "insured" included both of Jallad's members, which meant Jallad was required to present Allaeddin Jallad for an EUO.

The policy's examination-under-oath provision does not define "insured," but the policy lists only "Jallad & R Investments LLC" as the "Named Insured." Dkt. No. 61-2 at 5. Cypress offers no explanation for why Allaeddin Jallad is an "insured" subject to this provision other than asserting that he was Jallad's "Principal Member and President" and one of two "Jallad company Members." Dkt. No. 61 at 2, 4, 9.

At trial, the Court or a jury might or might not determine that Allaeddin Jallad was subject to the policy's examination-under-oath provision. But Cypress has not met its heavy burden at this time to establish beyond peradventure that it is entitled to summary judgment as a matter of law on this part of its declaratory judgment claim.

And, as to the rest of Cypress's claim, because the determination of Jallad's alleged breaches of the prompt notice clause and cooperation clause turn on whether Jallad's actions were reasonable, the undersigned finds Cypress fails to meet its heavy burden to show beyond peradventure that that it is entitled to summary judgment as

a matter of law and recommends that the Court deny Cypress's motion for summary judgment on its claim for declaratory judgment.

III.    Cypress's motion for summary judgment on Jallad's counterclaims

    A.    Breach of contract

Jallad alleges that "Cypress breached its contractual obligation and the subject insurance policy by failing to pay Jallad any policy benefits for the cost to repair the storm damage to Jallad's property from the June 5, 2018 storm. Cypress has also breached any contractual provisions on timely investigating, adjusting, and paying Jallad's insurance claim." Dkt. No. 18 at 9 ¶41.

Arguing in the alternative, if the Court determines that Cypress's motion for summary judgment on its declaratory judgment claim should be denied, Cypress asserts that Jallad's breach-of-contract counterclaim is precluded by the concurrent causation doctrine.

Jallad responds that, because the damage to the property was solely from a covered loss, there was no concurrent causation.

In Texas, "[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). In an insurance policy context, the insured must prove the existence of a valid insurance policy covering the claim and entitlement to money damages on that claim. *Bible Baptist Church v. Church Mut. Ins. Co.*, No. 2:21-cv-93-Z-BR, 2023 WL 1931912,

at *3 (N.D. Tex. Jan. 18, 2023).

Texas law requires an insured to bear the burden of proving its damages are covered by the policy in question. *See id*. The concurrent causation doctrine provides that, when covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered perils. *See id*. (citing *Wallis v. United Service Auto. Ass'n*, 2 S.W.3d 300, 302-03 (Tex. App–San Antonio 1999, pet. denied). If the doctrine applies, the insured must present some evidence upon which the jury can allocate the damage attributable to the covered loss. *See id*.

Under Texas law, allocation is an issue of fact, unless the insured fails to present any evidence regarding allocation. *See Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 548 (N.D. Tex. 2015) (citing *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 200, 201 (Tex. App. [14th Dist.] 2003, pet. denied) ("[W]e also find [the plaintiff] presented some evidence on this question creating a fact issue precluding summary judgment.") and *Wallis v. United Services Automobile Association*, 2 S.W.3d 300, 304 (Tex. App.–San Antonio 1999, pet. denied) (affirming the trial court's take-nothing judgment because the insured failed to present any evidence regarding the allocation of covered and non-covered damages)).

Cypress asserts that Jallad failed to provide any credible evidence from which a jury could allocate the roof damage between covered and uncovered risks.

Cypress argues that Jallad fails to provide evidence showing when, if any, hail occurred of sufficient size to require a full roof replacement. Cypress asserts that

weather data supports a hail event on June 6, 2018 but that there is also evidence of older and other hail events and roof damage outside of the four-month period of the Cypress Policy. *See* Dkt. No. 61-2 at 164-281 (Insight Engineering, Inc. Report), 282-372 (Boyd, Inc. Report). Cypress also argues that there was evidence of numerous roof and other repairs. *See id.* at 167, 285.

Jallad objects to the Declaration of Brian Moore, Cypress's Property Claims Director, *see* Dkt. No. 1-3, and the reports of Mark Kubena (Insight Engineering) and Darin McEwen (Boyd, Inc.), which are attached as exhibits P and Q. See Dkt. No. 76 at 15-16; see also Dkt. No. 84 (Cypress's response to Jallad's objections).

Jallad objects to paragraph 8 of Moore's Declaration because it ends with an incomplete sentence and is unintelligible. Cypress stipulates that the word does not appear but argues that mere scrivener's error does not render the paragraph conclusory. *See* Dkt. No. 84 151. A statement is conclusory when there are no underlying facts to substantiate the claims. *See Lee v. Liberty Ins. Co.*, No. 3:19-cv-321-L, 2021 WL 4502323, at *4 (N.D. Tex. Sept. 30, 2021).

Jallad also objects to paragraphs 4, 5, 6 and 8 of Moore's Declaration on the basis that the testimony is speculative and consist of unsubstantiated conclusions. These paragraphs refer generally to Cypress's investigation of the claim and subsequent denial. Moore states that his declaration is based on his personal knowledge and from his review of the files and records maintained by Cypress in the ordinary course of business. And there is no dispute that Cypress believed that the Jallad examination under oath testimony remained necessary and material. Although

Jallad may disagree with that assessment, it is supported by the evidence.

Brian Moore's Declaration (Exhibit A) is competent summary judgment evidence and Jallad's objections to it should be overruled.

Jallad objects to Kubena's and McEwen's reports (Exhibits P and Q) on the basis that the witnesses do not provide their expert qualifications, that they are unsworn and unauthenticated, and that they contain inadmissible hearsay. *See* Dkt. No. 76 at 16-17.

Cypress argues that the reports are not being offered for the truth of the matter asserted. Rather, Cypress offers them to show the existence of a dispute with Jallad with respect to coverage. As such, they do not constitute hearsay. *See* FED. R. EVID. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); *see also Securities and Exchange Commission v. Faulkner*, No. 3:16-cv-1735-D, 2021 WL 3930091, at *12 (N.D. Tex. Sept. 2, 2021) (holding that expert reports were not hearsay because they were not offered to prove the truth of the matter asserted).

Cypress also argues, alternatively, that should the Court not admit the actual expert reports, Exhibit P and Exhibit Q are admissible pursuant to Federal Rule of Evidence 803(17) and (18). These exceptions to hearsay apply to the exhibits to the expert reports as the exhibits are generally used and relied upon by engineering and construction consultants as well as the referenced treatises or similar documents as reliable authorities. Specifically, the following exhibits are subject to admission

pursuant to Federal Rule of Evidence 803(17) and (18): Exhibit P, pages 57-59, 61-62, 64-118 and Exhibit Q, pages 71-78.

Jallad also objects that Exhibits P and Q are unauthenticated. A document may be authenticated by considering the appearance, contents, substance, or other distinctive characteristics of the item, taken together with all the circumstances. *See Sport Supply Group, Inc. v. Savage*, No. 3:10-cv-913-O, 2011 WL 13234197, at *5 (N.D. Tex. Dec. 22, 2011) (citing FED. R. EVID. 901(b)(4)). Exhibit P and Exhibit Q are authenticated and made admissible by the Declaration of Rhonda J. Thompson, Cypress's lead counsel, stating that Exhibits P and Q are true and correct copies. *See* Dkt. No. 61-2 at 377 ¶3, 4. Kubena's report is also signed and stamped with his Professional Engineer stamp, as well as the Forensic Weather Consultants report contained therein and relied upon by Kubena. *See* Dkt. No. 61-2 at 169, 281 (Exhibit P at 6, 218). Jallad does not assert that the exhibits have been altered or are otherwise inauthentic.

Exhibits P and Q are competent summary judgment evidence and Jallad's objections to them should be overruled.

In response, Jallad asserts that it has presented summary judgment evidence from which a reasonable juror could find the damage was from the June 5, 2018 hailstorm and not from any other non-covered peril, referring generally to Gary Treider's report and testimony. *See* Dkt. No. 75 at 30-46.

Cypress objects to statements in Gary Treider's Declaration and portions of his report. *See* Dkt. No. 85 at 5-6); Dkt. No. 75 at 30-46. The undersigned will consider

Treider's testimony and report as not being offered for the truth of the matter asserted but to show the existence of a dispute with Cypress with respect to causation.

Cypress objects to portions of Treider's testimony about methodology. Cypress objects to the words "typical methodology" in paragraph 10 as irrelevant, *see* Dkt. No. 85 at 5, and the first sentence in paragraph 12 and second sentence of paragraph 13, *see id*. at 6, as conclusory. But Treider devotes an entire section of his report to the methodology that he used in preparing his report, and, considering those statements in context and Treider's testimony as a whole, the objected-to statements are neither irrelevant nor conclusory. The objections should be overruled.

Cypress also objects to portions of Treider's testimony concerning causation. Cypress objects to the first sentence in paragraph 12, the "some other damages" in paragraph 12, and paragraphs 16, 17, 20, 21, 22, 23 and 25 in their entirety as conclusory. *See id*. at 31-34. These paragraphs refer generally to Jallad's investigation of the claim. Treider concluded that the June 5, 2018 hail storm damaged the roof to such an extent that the property needed a full roof replacement. *See id*. at 33-34. Treider does not attribute any of the roof damage to another event. Treider states that his declaration is based on his personal knowledge and from his review of the Cypress's experts reports. And there is no dispute that Jallad believed all of the damages should be allocated to the June 5, 2018 hail storm. These objections should be overruled.

And Cypress objects to paragraph 19 as inadmissible hearsay. *See id*. at 33. But paragraph 19 is admissible because, as discussed above, Trieder's Declaration is not

being offered for the truth of the matter asserted. Rather, Jallad offers it to show the existence of a dispute with Cypress with respect to coverage.

Therefore, the undersigned finds that Jallad has submitted sufficient summary judgment evidence to create a genuine issue of material fact as to causation of the roof damage. Accordingly, since there are issues of material fact, Cypress's motion for summary judgment should be denied as to Jallad's breach of contract claim. This objection should be overruled.

B.    <u>Extra-contractual claims</u>

Jallad asserts counterclaims for violations of the Texas Insurance Code and DTPA, unfair insurance practices, and breach of the duty of good faith and fair dealing.

Cypress argues that, in the absence of proof that it breached the contract, all of Jallad's counterclaims fail as a matter of law because they are precluded by the independent injury rule.

But, as explained above, viewing the facts in the light most favorable to Jallad, the undersigned finds that there are questions of material fact as to whether Cypress breached the contract, and concludes that Cypress's motion for summary judgment on Jallad's counterclaims should be denied.

## Recommendation

The Court should deny Plaintiff Cypress Property and Casualty Insurance Company's Motion for Summary Judgment [Dkt. No. 60].

A copy of these findings, conclusions, and recommendation shall be served on

all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: August 16, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE